UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ALYSSA PLOETZ,**

    **Plaintiff,**

  v.                                                           Case No. 21-CV-608

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Alyssa Ploetz seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Ploetz filed an application for a period of disability and disability insurance benefits on July 16, 2019. (Tr. 68.) She filed a Title XVI application for SSI on August 23, 2019. (Tr. 75.) In both applications, Ploetz alleged disability beginning on August 29, 2018 due to "bipolar," "attention deficit," and anxiety. (Tr. 68, 75.) Ploetz's applications were denied initially and upon reconsideration. (Tr. 13.) Ploetz filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on September 4, 2020. (Tr. 30–65.)

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner. *See* Fed. R. Civ. P. 25(d).

Ploetz testified at the hearing, as did her grandmother, Carol Ploetz, and William Dingess, a vocational expert. (Tr. 31.)

In a written decision issued November 4, 2020, the ALJ found that Ploetz had the severe impairments of depressive disorder, bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). (Tr. 16.) The ALJ found that Ploetz did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 16–18.) The ALJ further found that Ploetz had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: can perform simple, routine tasks; can never interact with the public; and can occasionally interact with coworkers and supervisors but cannot perform tandem tasks. (Tr. 18–22.)

While the ALJ found that Ploetz was unable to perform her past relevant work as a receptionist and optometric assistant, he determined that given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Ploetz could perform. (Tr. 22–24.) As such, the ALJ found that Ploetz was not disabled from August 29, 2018 through the date of the decision. (Tr. 24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Ploetz's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not

conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Ploetz advances two arguments for remand: (1) the ALJ failed to build a logical bridge from the evidence to the RFC assessment; and (2) the determination of her benefits claim was constitutionally invalid. (Pl.'s Br., Docket # 13.) I will address the constitutional argument first.

#### 2.1 Constitutional Challenge to Structure of the SSA

Ploetz argues that the unconstitutional structure of the SSA resulted in an invalid adjudication of her claim. (Pl.'s Br. at 15–19.) Ploetz relies on *Seila Law LLC v. CFPB*, 140 S.Ct. 2183, 2204 (2020), in which the Supreme Court held that the leadership of the Consumer

Financial Protection Bureau by a single director who was removeable by the President only for inefficiency, neglect, or malfeasance was a violation of separation of powers. According to Ploetz, the similar structure of the SSA—specifically that the Commissioner is the singular head of the agency, serves for six years, and cannot be removed by the President except for cause under 42 U.S.C. § 902(a)(3)—is also unconstitutional. (Pl.'s Br. at 16.) She concludes that because former Commissioner Andrew Saul lacked constitutional authority, he could not delegate valid constitutional authority to the ALJ who decided her claim. (*Id.*)

In response, the Acting Commissioner concedes that 42 U.S.C. § 902(a)(3) violates separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (Def.'s Br. at 4, Docket # 16, citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)). However, the Acting Commissioner asserts, Ploetz is not entitled to relief absent a showing of harm caused by the unconstitutional statutory removal restriction. (*Id.*)

I agree with the Acting Commissioner. Since deciding *Seila Law*, the Supreme Court has explained that even when an unconstitutional removal restriction exists, a plaintiff challenging the restriction is not automatically entitled to retrospective relief. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788 n.3 (2021) ("The unlawfulness of a removal provision does not strip an official of the power to undertake the other responsibilities of his office."). Instead, the unconstitutional removal restriction must inflict compensable harm. *Id.* at 1789. Ploetz argues that she suffered harm in the form of a constitutionally invalid adjudicatory process. (Pl.'s Br. at 17–18.) However, as the *Collins* court made clear, the unconstitutionality of a removal provision does not automatically void agency action. 141 S. Ct. at 1788 n.3. Because

Ploetz has not demonstrated a connection between § 902(a)(3) and the denial of her claim, I find that remand is not warranted on this basis.

### 2.2 RFC Assessment

Ploetz next argues that the ALJ failed to adequately account for her limitations in maintaining concentration, persistence, or pace and in interacting with others in her RFC. RFC is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1); SSR 96–8p.[2] In assessing Ploetz's limitations caused by her mental impairments, the ALJ determined that Ploetz had mild limitations in the areas of understanding, remembering, or applying information and adapting or managing oneself. (Tr. 17–18.) The ALJ further determined that Ploetz had moderate difficulties in the areas of interacting with others and concentration, persistence, or pace. (Tr. 17.) The ALJ ultimately concluded that based on the record evidence, Ploetz could perform simple, routine tasks; could never interact with the public; and could occasionally interact with coworkers and supervisors but could not perform tandem tasks. (Tr. 18.)

In assessing Ploetz's RFC, the ALJ considered the opinion of consultative examiner Jamie Engstrom, Psy.D. (Tr. 20, 21–22.) Dr. Engstrom, who examined Ploetz in December 2019, observed that Ploetz presented at the examination with a "down" mood and Ploetz described experiencing periods of anhedonia, difficulties concentrating, hypersomnia, low energy, and recurrent thoughts of death interspersed with periods of elevated and irritable mood with increased energy, decreased need for sleep, racing thoughts, distractibility, and

---

[2] As the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520, *et seq.* for ease of reference.

impulsive spending. (Tr. 361.) Dr. Engstrom also recounted Ploetz's reports of having unexpected panic attacks several times per week and persistent worries about having panic attacks outside her home. (*Id.*)

Dr. Engstrom opined that Ploetz exhibited no limitations in understanding, remembering, and applying information and mild limitations in adapting or managing herself. (Tr. 362.) Dr. Engstrom also opined that Ploetz had mild limitations interacting with others, noting that when in a hypomanic episode, Ploetz may have trouble effectively communicating with coworkers due to racing thoughts, and her irritability and difficulties being around others for a sustained period of time would likely pose challenges as well. (*Id.*) Furthermore, Dr. Engstrom opined that Ploetz displayed moderate to marked limitations in concentration, persistence, or pace, explaining that "her mood symptoms are likely to disrupt her ability to consistently attend work, and she would be reluctant to leave the house to go to work due to fear of panic attacks." (*Id.*) Finally, Dr. Engstrom opined that based on Ploetz's performance during portions of the evaluation, she was "likely to abandon or not attempt tasks she perceived as too difficult" and "appeared tentative and reassurance seeking, which, combined with her reported anxiety, would likely result in her needing extra time to complete more than perfunctory work tasks." (*Id.*)

The ALJ found Dr. Engstrom's opinion persuasive because it was "well-supported" by Dr. Engstrom's own exam findings and Ploetz's treatment records. (Tr. 21–22.) However, the ALJ did not find persuasive the portion of Dr. Engstrom's opinion stating that Ploetz may have marked limitations in concentration, persistence, or pace. (Tr. 22.) Since Dr. Engstrom opined that Ploetz would likely need extra time to complete more than perfunctory work tasks, the ALJ reasoned, Dr. Engstrom's opinion indicated that Ploetz could perform simple,

routine tasks. (*Id.*) The ALJ further reasoned that Ploetz's therapy treatment notes consistently documented intact attention, and the lack of adjustment to Ploetz's ADHD medications indicated that she had no more than moderate limitations in concentration, persistence, or pace. (*Id.*)

Ploetz contends that the ALJ only found her ability to maintain concentration to be less severe than Dr. Engstrom opined, "thus leaving [Dr. Engstrom's] limitation in work pace and persistence intact." (Pl.'s Br. at 11.) However, she argues, her RFC fails to account for Dr. Engstrom's findings regarding her ability to maintain persistence or pace at work. (*Id.*) As for pace, Ploetz points to Dr. Engstrom's opinion that she would likely need extra time to complete more than perfunctory work tasks. (*Id.*) However, the ALJ did address Dr. Engstrom's pace finding. Specifically, the ALJ noted that based on Dr. Engstrom's opinion that Ploetz would need more time to complete more than perfunctory tasks, Ploetz could perform simple, routine tasks. And while Ploetz simply argues that limitations to simple, routine tasks do not account for moderate limitations in concentration, persistence, or pace, she does not point to any pace limitations supported by the record that the ALJ missed. Thus, the ALJ did not err in this regard.

As for persistence, Ploetz notes Dr. Engstrom's opinion that her mood symptoms would likely disrupt her ability to consistently attend work and that she would be likely to abandon or not attempt tasks that she perceives as too difficult. (Pl.'s Reply Br. at 8, Docket # 18.) Again, the ALJ determined from Dr. Engstrom's opinion that Ploetz could perform simple, routine tasks. Thus, the ALJ accounted for Dr. Engstrom's opinion that Ploetz would not be able to persist due to her tendency to abandon or not attempt *difficult* tasks. Moreover, as with Ploetz's argument regarding pace, she offers no persistence limitations that should

7

have been included in the RFC, nor does she point to evidence supporting further restrictions. In fact, the ALJ explicitly rejected Ploetz's allegations with respect to her difficulty leaving home, noting that "the record documents no evidence of anger, belligerence, or other anti-social behavior" and "consistently documents [Ploetz] as anxious but pleasant." (Tr. 17.) For all of these reasons, the ALJ's assessment of Ploetz's persistence limitations does not compel remand.

Ploetz next argues that the RFC fails to account for her moderate limitations in interacting with others. (Pl.'s Br. at 15.) She asserts that the ALJ "noted that she would have panic attacks, limitations in socializing, and difficulty leaving the house" but failed to explain how these difficulties were accommodated by the RFC. (*Id.*) However, Ploetz misrepresents the ALJ's findings regarding her ability to interact with others. The ALJ did not find that Ploetz would have panic attacks and difficulty leaving the house. Rather, the ALJ noted that the record consistently documented Ploetz as anxious but pleasant and recounted Ploetz's own reports of "experiencing frequent panic attacks and being fearful socializing" and difficulty leaving the house. (Tr. 17.) And while the ALJ did find that Ploetz would have trouble interacting with others due to her social anxiety, the ALJ accounted for this difficulty by limiting Ploetz to only occasional interaction with coworkers and supervisors, no tandem tasks, and no interaction with the general public. (Tr. 22.) Ploetz does not explain how these limitations were insufficient. Thus, remand is not warranted on this ground.

## CONCLUSION

Although Ploetz argues that the ALJ erred in denying her benefits, I find the ALJ's decision is supported by substantial evidence. Thus, the Commissioner's decision is affirmed and the case is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of July, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge